IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:18 CR 30011 MJR |
| | ) |
| ANTHONY SHANKLIN, | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

    Anthony Shanklin is the only child of a single mother. He did not meet his father until he was 13 years old. His father lives in Milwaukee and is unemployed. His mother, Theresa Hawkins, worked two jobs and his grandmother also helped raise him. A family friend, Robert Wills and his wife Evelyn, watched Anthony after school because he was often home alone. Mr. Wills notes that Anthony was a good kid and never caused any trouble. Anthony excelled in music and could play several different instruments in the school band. He hoped to earn a music scholarship to college. However, in high school Anthony started running with the wrong crowd. He dropped out of school in March of his junior year. He picked up a marijuana possession case at age 17 and distribution charges at age 19. He was ultimately sentenced to 364 days in jail. He has no history of violence and no prior weapons offenses.

    On November 24, 2017, Mr. Shanklin was stopped by the Alton Police Department. During the stop Mr. Shanklin said he "might as well make it easy and offered to show [the officers] where it is." He went on to tell them the gun was under the driver's seat. The officers also found over two ounces of marijuana. He told the officers he was going to a party and would share it with others so they could smoke it. If there was any marijuana left after the party, he would likely sell it or give it away.

On October 25, 2018, Mr. Shanklin filed an unopposed request to participate in the Court's combined plea and sentencing procedure. At that time, the parties contemplated a plea agreement with a potential range of punishment of 97 - 120 months. The parties also agreed to recommend a below guideline sentence of 72 months. However, the parties had mistakenly counted the cases noted in Paragraphs 31 and 32 of the PSR as separate sentences. In fact, those cases should be counted as a single sentence, which resulted in a lower base offense level and a lower criminal history score. The correct range of punishment is 63-78 months. Mr. Shanklin intends to enter an open plea of guilty on January 18 and proceed immediately to sentencing. Mr. Shanklin is respectfully requesting a sentence of 55 months – a sentence eight months below the guidelines.

Mr. Shanklin has been held in the Alton City Jail for eight months. Mr. Shanklin is locked in his cell at least 23 hours per day. He is provided one hour out of his cell which includes both their recreational time and time to shower. His cell consists of two bunks, one toilet, one sink and one telephone/intercom device. Other than the bunks, there is no seat or table on which to write. The cells are approximately 10 x 12 feet. There are no outside windows or natural light in the jail.

The cell doors are solid with a small window and a chuckhole through which all meals and medications are served. The chuckholes are closed when not being used. The structure of the cells do not allow the detainees to speak to one another from cell to cell. There is no indoor rec room or exercise room. Rec time occurs in the hallway between the cells. At the end of that hallway there is a shorter hallway at a right angle. The smaller hallway contains a television, a chin-up bar and a dip station.

There is very little to do during the 23 hours of lockdown. Radios, televisions and any other electronic devices are prohibited in the cells. Detainees are allowed to keep up to four books in their cells. Mr. Shanklin reports he spends a few hours each day reading and the rest of the day going crazy.

Mr. Shanklin has been living for eight months in conditions of extreme isolation akin to solitary confinement. A brief comparison to solitary confinement cases litigated in the courts demonstrates that Mr. Shanklin is being treated no better than prisoners in segregated housing units or supermax facilities.

In <u>Isby v. Brown</u>, the Seventh Circuit considered a claim by a man being held in the Indiana Department of Corrections Special Confinement Unit or "SCU."

> Isby's cell is approximately eighty square feet, and he remains inside it for twenty-three hours each day. There are windows through which Isby can see the hallway with a skylight, and a hallway clock is also visible from Isby's cell. He has a television and desk and is able to do some exercises such as push-ups in his cell. Isby is limited to one hour per day of out-of-cell exercise in a small outdoor enclosure surrounded by a chain-link fence with a basketball hoop and a pull-up bar.
>
> …. Isby also may be outside his cell for social visits, attorney visits, medical appointments, showers, and meetings with prison staff as needed. However, because Isby is housed in the SCU, he does not have access to the vocational, work, or educational programs offered to general-population inmates.
>
> ….Isby has eaten all of his meals alone from food trays passed by correctional officers through a narrow port in the cell door.

<u>Isby v. Brown</u>, 856 F.3d 508, 513-14 (7th Cir. 2017).

In <u>Wilkinson v. Austin</u>, 545 U.S. 209, 214–15 (2005), the Supreme Court described the conditions at Ohio's supermax prison, the Ohio State Penitentiary (OSP):

> Conditions at OSP are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement. In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their

3

> cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

Wilkinson v. Austin, 545 U.S. 209, 214–15 (2005).

"'Supermax prisons are maximum security facilities with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." Wilkinson, 545 U.S. at 209.  Ohio created the OSP in response to the rise in prison gangs and prison violence.  It opened the OSP after a prison riot in a maximum security prison.  Similarly, Mr. Isby was placed in the SCU after he punched a counselor in the face, stabbed one correctional officer in the head, another in the neck, and killed a guard dog – for which he was convicted of attempted murder and battery and sentenced to 40 additional years.

Mr. Shanklin is not in administrative or disciplinary segregation.  He was randomly placed in Alton by the U.S. Marshals.  As a pretrial detainee, he must be protected from all forms of punishment under the Due Process Clause.  Bell v. Wolfish, 441 U.S. 520, 536, n. 16 (1979). The ABA's General Principles Governing Imprisonment, Standard 23-1.1(e) states, in pertinent part:

> For a prisoner not serving a sentence for a crime, the purpose of imprisonment should be to assure appearance of the prisoner at trial and to safeguard the public, not to punish.

Detainees in Alton are neither screened in advance for mental health problems nor afforded any review process once they are placed there, which any other prisoner in solitary

4

confinement would be afforded. "The Supreme Court held in Hewitt that the Due Process Clause mandates that prison officials periodically review whether an inmate placed in administrative segregation continues to pose a threat." Isby, 856 F.3d at 524 (citing Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983)). Likewise, federal inmate being punished in disciplinary segregation in the BOP would be entitled to Three Day, Seven Day and Thirty Day reviews, including in-person hearings every 30 days. 28 CFR 541.26.

Pretrial detainees in Alton may actually be locked down more than 23 hours per day because they must return to their cells to allow the COs to do their 30-minute rounds, serve meals and medication, and move detainees for visitation. What is left of their one hour is not spent in an exercise yard. It is divided between showering, cutting their own hair, walking in the hallway, watching television or taking the one chance they have that day to speak with the other detainees. Thus, the Alton detainees are not afforded one hour of exercise outside the cell each day; they are potentially receiving less than five hours per week. "[F]ailure to provide inmates . . . with the opportunity for at least five hours a week of exercise outside the cell raises serious constitutional questions." Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir. 1988).

The conditions at Alton are nowhere close to the conditions of confinement recommended by the ABA Standards for Criminal Justice – Treatment of Prisoners.

**Standard 23-3.6 Recreation and out-of-cell time**

> (a) To the extent practicable and consistent with prisoner and staff safety, correctional authorities should *minimize the periods during the day in which prisoners are required to remain in their cells*.
>
> (b) Correctional authorities should provide all prisoners daily opportunities for *significant out-of-cell time and for recreation at appropriate hours* that allows them to maintain physical health and, for prisoners not in segregated housing, to socialize with other prisoners. Each prisoner, including those in segregated housing, should be offered

5

the opportunity for *at least one hour per day of exercise*, in the open air if the weather permits.

(c) Correctional authorities should whenever practicable allow each prisoner not in segregated housing to *eat in a congregate setting*, whether that is a specialized room or a housing area dayroom, absent an individualized decision that a congregate setting is inappropriate for a particular prisoner. Prisoners should be allowed an adequate time to eat each meal.

(Exhibit B) (emphasis added)

The regulations governing pretrial detainees in BOP custody also require greater recreational time than Alton allows: "At a minimum, . . . staff shall provide the pretrial inmate with the following recreational opportunities: **(1)** One hour daily of outside recreation, weather permitting; or **(2)** Two hours daily of indoor recreation." 28 CFR § 551.115(b).

The dangers of isolation during confinement are well known. For over 100 years, courts have considered the effects of solitary confinement on the health and well-being of the prisoner. In the case of In re Medley, 134 U.S. 160 (1890), the Court held: "[T]he solitary confinement to which the prisoner was subjected . . . was an additional punishment of the most important and painful character, and is, therefore, forbidden by this [*ex post facto*] provision of the Constitution of the United States." 134 U.S. 160, 171 (1890).

> Solitary confinement—that is the confinement of a prisoner alone in a cell for all, or nearly all, of the day with minimal environmental stimulation and minimal opportunity for social interaction—can cause severe psychiatric harm. It has indeed long been known that severe restriction of environmental and social stimulation has a profoundly deleterious effect on mental functioning.

Stuart Grassian, *Psychiatric Effects of Solitary Confinement,* 22 Wash. U. J.L. & Pol'y 325 (2006).

One study has shown that "inmates ever assigned to solitary confinement were 3.2 times as likely to commit an act of self-harm per 1000 days at some time during their incarceration as

those never assigned to solitary." *Kaba, Fatos; et al., "Solitary Confinement and Risk of Self-Harm Among Jail Inmates," American Journal of Public Health, Vol. 104, No. 3: 442, at 444 (March 2014).* "Although only 7.3% of admissions included any solitary confinement, 53.3% of acts of self-harm and 45.0% of acts of potentially fatal self-harm occurred within this group." *Id.* at 442.

In Isby, the court noted: "We have held that 'prolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment ... depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement.'" 856 F.3d at 521 (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012)).

Previous courts have recognized that "conditions of confinement could provide a basis for departure, since this factor was apparently not taken into account by the Sentencing Commission and could be unusual enough to take a case out of the heartland of the applicable guideline." United States v. Pressley, 345 F.3d 1205, 1218 (11th Cir. 2003) (citing United States v. Carty*, 264 F.3d 191, 196 (2d Cir.2001)). In United States v. Ramirez-Gutierrez, 503 F.3d 643, 645-46 (7th Cir. 2007), the court noted, "Harsh or unpleasant conditions of pretrial confinement are not among the § 3553(a) factors, and we have not decided whether such conditions could ever justify a reduced sentence." However, "conditions of confinement might warrant a sentencing judge's attention if a defendant can show that the conditions were ***unusually harsh***." *Id.* (emphasis added) Mr. Shanklin believes the conditions of confinement at the Alton City Jail are unusually harsh and push the boundaries of what is constitutionally permissible.

Mr. Shanklin believes a sentence of 55 months is reasonable for the offense of a felon with a gun under the front seat of his car.  This sentence is sufficient to address all of the § 3553(a) factors and takes into consideration Mr. Shanklin's polite behavior with the police at the time of his arrest, the absence of violence or weapons offenses in his past, and the unusually harsh conditions he has endured at the Alton City Jail for the past eight months.

>Respectfully submitted,
>
>*/s/ Stephen R. Welby*
>STEPHEN R. WELBY
>Federal Public Defender
>650 Missouri Avenue, Room G10A
>East St. Louis, Illinois 62201
>(618) 482-9050
>ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies he has caused a true and correct copy of the foregoing to be served upon:

>Mr. Derek Wiseman
>Assistant United States Attorney
>Nine Executive Drive, Suite 300
>Fairview Heights, Illinois  62208

via electronic filing with the Clerk of the Court using the CM/ECF system this 4th day of January, 2019.

>*/s/ Stephen R. Welby*
>STEPHEN R. WELBY